# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **JAMES RONALD BAKER,** | : | **Case No. 1:14-cv-512** |
| | : | |
| **NANCY ROSS,** | : | **Judge** |
| | : | |
| **THOMAS HOWARD,** | : | |
| | : | **VERIFIED COMPLAINT FOR** |
| **DARREN OLIVER,** | : | **DECLARATORY JUDGMENT,** |
| | : | **TEMPORARY RESTRAINING** |
| **BAKER FAMILY HOLDINGS, LLC,** | : | **ORDER, AND PRELIMINARY AND** |
| | : | **PERMANENT INJUNCTIVE** |
| **RADIANT SALES, INC.,** | : | **RELIEF** |
| | : | |
| **HOWARD LLC,** | : | **EXHIBIT A:** *PORTSMOUTH* |
| | : | *RENTAL DWELLING CODE* |
| **and** | : | |
| | : | **EXHIBIT B:** *PORTSMOUTH* |
| **OLIVER II PROPERTIES, LLC** | : | *ENFORCEMENT LETTERS* |
| | : | |
|     **Plaintiffs,** | : | **EXHIBIT C:** *INSPECTION* |
| | : | *CHECKLIST* |
| **v.** | : | |
| | : | **EXHIBIT D:** *PORTSMOUTH* |
| **CITY OF PORTSMOUTH, OHIO,** | : | *ORDINANCES APPLYING TO* |
| | : | *RENTAL PROPERTIES* |
| **CHRISTOPHER S. SMITH, in his official** | : | |
| **capacity as "Health Commissioner," City of** | : | **EXHIBIT E:** *RELEVANT* |
| **Portsmouth,** | : | *PORTSMOUTH RENTAL LICENSING* |
| | : | *FINANCIAL STATEMENTS* |
| **and** | : | |
| | : | |
| **ANDREW L. GEDEON, in his official** | : | |
| **capacity as Director of Environmental** | : | |
| **Health City of Portsmouth, and in his** | : | |
| **individual capacity,** | : | |
| | : | |
|     **Defendants.** | | |

Plaintiffs JAMES RONALD BAKER, NANCY ROSS, THOMAS HOWARD, DARREN OLIVER,

BAKER FAMILY HOLDINGS, LLC, RADIANT SALES, INC., HOWARD LLC, and OLIVER II

PROPERTIES, LLC, for their Verified Complaint against Defendants CITY OF PORTSMOUTH, OHIO,

CHRISTOPHER SMITH, and ANDREW GEDEON hereby allege as follows:

## INTRODUCTION

1.     This is an action brought pursuant to 42 U.S.C. §1983 for declaratory judgment, temporary restraining order, preliminary and permanent injunction, actual and nominal damages, and other relief arising from the unconstitutional policies, practices, and threats of Defendants City of Portsmouth, Christopher Smith, and Andrew Gedeon.  Defendants' policies, practices, and conduct threaten Plaintiffs with irreparable harm to their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  The harm may only be remedied by a ruling from this Court.

2.     Defendants have impeded and threaten to further unconstitutionally impede Plaintiffs in their right to be free from unlimited warrantless searches without probable cause by maintaining, implementing and enforcing vague policies that (i) threaten Plaintiffs and others with subjection to unduly broad warrantless searches of their houses and business property without probable cause; (ii) violates Plaintiffs' reasonable expectation of privacy; and (iii) retaliate against Plaintiffs for exercising their Fourth Amendment rights by either (a) pressing criminal charges against them, or (b) depriving them of their property rights, including but not limited to the right to use their rental property by renting it to others.

3.     As a result of the policies, practices, and customs of the Defendants, as well as certain conduct by one or more Defendants, Plaintiffs will suffer irreparable harm unless the Defendants are immediately enjoined from restricting their Fourth Amendment rights in this manner.

4.     For the reasons above, Plaintiffs seek, amongst other things, declaratory judgment and injunctive relief determining that the offending provisions of the City's Rental Dwelling Code, codified in "Title Seven" of The City of Portsmouth Building Code (hereinafter "The Code," or "The Program"),  are unconstitutional on their face and as applied to them, and further, that the Code is insufficient to support the issuance of an "administrative" warrant.

## PARTIES

5.     The Plaintiffs are rental property owners in the City of Portsmouth, either directly or through their status as controlling members in the Limited Liability Companies that own the rental properties specified below.

6.     Plaintiffs own 82 rental homes within the City of Limits of Portsmouth, Ohio each of which is subject to the Rental Dwelling Code and its inspection requirements.

7.     Plaintiffs JAMES RONALD BAKER and BAKER FAMILY HOLDINGS, LLC own, within the city limits of Portsmouth, 28 rental properties.[1]

8.     In 2013, Baker paid in excess of $1,300 in rental inspection fees to Portsmouth.

9.     Plaintiffs THOMAS HOWARD and HOWARD LLC own, within the city limits of Portsmouth, nine rental homes; and have paid $900 in inspection fees.[2]

10.     Plaintiffs DARREN OLIVER and OLIVER II PROPERTIES, LLC own, within the city limits of Portsmouth, 31 rental properties, and paid in excess of $2,900 in inspection fees in to the City of Portsmouth.[3]

11.     Plaintiffs NANCY ROSS and RADIANT SALES, INC. own 14 rental properties;[4] and paid approximately $640 in inspection fees in December of 2012, and approximately $640 more in inspection fees in December of 2013.

12.     Each limited liability company Plaintiff is controlled by the corresponding named Plaintiff.

---

[1]     Baker Family Holdings and Mr. Baker own properties at the following addresses in Portsmouth:  2006, 2014, and 2018 Harrisonville Road;  2010 (HUD), 1924, and 1925 (HUD) Vally Street;  4200 Deever Street (HUD); 3699 Pleasant Avenue (HUD); 5620 Kentland (HUD); 5721 Glen Street; 1623 7th Street; 1015 18th Street; 1105, 1216, 1314, and 1316 (HUD) 17th Street; 1104 and 1237 Kenny's Lane; 1832 Grandview; 3054, 3097 Walnut (HUD), 3120 Walnut; and 615 Lincoln Street (six apartments).  A number of these properties are already inspected by the United States government though the Department of Housing and Urban Development.

[2]     Mr. Howard and Howard LLC own properties at the following addresses in Portsmouth:  2609 and 2613 Argonne Road, 1314 High Street, 1663 Logan Street, 1606 12th Street, 1611 Summit Street, 1652 8th Street, 1602 Grandview Street, 936 29th Street.  The last two of these properties are inspected by the United States government through the Department of Housing and Urban Development.

[3]     Mr. Oliver and Oliver II Properties own properties at 1805 Vinton Ave., 2325 Grant Street, 1603 High Street, 1718 Valley and 2005 Valley Street, 310 and 310 1/2 Bloom Street, 5601 and 5601 1/2 3rd Street, 1824 Grandview Ave., 1311 and 1313 Center Street, 1317 Lincoln Street, 1322 17th Street, 510 Campbell Avenue (Apartments A, B, C, and D), 2001 Mabert Road, 1509, 1509 1/2, 1667, and 1677 Robinson Avenue, 2224 Waller Street, 1615 and 1615 1/2 7th Street, 535, 537, and 537 1/2 5th Street, and 403 and 412 Boundary Street.

[4]     Ms. Ross and Radiant Sales own properties at the following addresses in Portsmouth:  two apartments at 1503 5th Street; two apartments at 3157 Walnut Street; two apartments at 3172 Walnut Street; 1031 Ruhlman; 1911 20th Street; 1925 20th Street; 5410 Winchester Street; 1911 Summit Street; 1605 Franklin Street; 4141 Hill Street, and 4139 Hill Street.

13.    Each LLC Plaintiff is a domestic limited liability company duly organized and existing under the laws of the State of Ohio, with its principal place of business in Ohio.

14.    Each of the Plaintiffs' properties have been inspected once by the City of Portsmouth, in late 2013 through early 2014.

15.    None of the Plaintiffs have voluntarily and knowingly consented to the Rental Dwelling Code inspections.

16.    Each inspection of each parcel of plaintiffs' rental property was coerced through the implied threat of loss of property or liberty; and plaintiffs continue to be coerced into providing involuntary consent to such inspections.

17.    Defendant City of Portsmouth, Ohio is a municipal corporation located within Scioto County, Ohio; it is created and existing under and by virtue of the laws of the State of Ohio.  In fulfilling its duties, the City acts by and through various commissions and public officials, including without limitation the trustees and the Health Commissioner and the Director of Environmental Health.

18.    Defendant CHRISTOPHER SMITH is, and has been at all times relevant to the facts at issue in this case, the "Health Commissioner" of the City of Portsmouth.

19.    Defendant ANDREW L. GEDEON is and has been at all times relevant to the facts at issue in this case, the Director of Environmental Health of the City of  Portsmouth.

20.    Defendants Smith and Gedeon, as part of their official duties and responsibilities with the City of Portsmouth, implement the Rental Dwelling Code and/or enforce the unconstitutional restrictions accomplished through the City's policies and practices (as described herein).

21.    Defendants Gedeon and Smith are individuals who undertook specific action so as to deprive and/or violate the constitutional rights of the Plaintiffs and did so in their individual capacities, as part of their official duties and responsibilities as employees and/or agents of the City of Portsmouth, and in their official capacity of adopting and implementing a policy, practice or custom of the City of Portsmouth.

22.     Defendants Gedeon and Smith threatened Plaintiffs with loss of property and criminal charges as a consequence to any attempt to assert a constitutional right to be free from unreasonable searches of their houses.

23.     All actions by the Defendants described herein were undertaken under color of state law which caused the deprivation of Plaintiffs' rights protected by the United States Constitution.

24.     All acts herein of the Defendant City of Portsmouth, its officers, agents, servants, employees or persons acting at their behest or direction, were done and are continuing to be done under the color or pretense of state law.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is brought to prevent imminent deprivations, under color of state law, of rights, privileges and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil and constitutional rights; under 28 U.S.C. § 2201(a), to secure declaratory relief; under 28 U.S.C. § 2202, to secure preliminary and injunctive relief and damages; and under 42 U.S.C. § 1988 to grant Plaintiffs' prayer for relief regarding the recovery of costs, including damages, restitution, and reasonable attorney fees.

26.     Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) and Local Rule 82.1 as (i) Defendants are situated within this judicial district and division, (ii) the Defendants transact business within this District, and (iii) the conduct complained of occurred within this District.

<u>**FACTUAL ALLEGATIONS**</u>

*The City of Portsmouth Rental Dwelling Code:  Prohibition on Renting Homes Without Consenting to a Warrantless Search*

27.    Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

28.    The City of Portsmouth, Ohio enacted its Rental Dwelling Code in late 2012.  ***See Exhibit A: Rental Dwelling Code.***

29.    The Code took effect on January 3, 2013.

30.    The Code mandates that, unless the property qualifies under one of the many exemptions articulated in Section 1361.08(C), "All residential premises within the city of Portsmouth owned for rental purposes or occupied by a party other than the owner . . . <u>shall require a rental dwelling permit</u> from the Portsmouth City Board of Health."[5]  Section 1361.08.

31.    Section 1361.02(A) of the Program provides "The Health Commissioner shall ensure the periodic inspection of rental dwellings subject to the provisions governing the issuance of a permit for the operation of such rental dwelling."  Section 1361.02(A).

32.    At least one inspection per year is required.  Section 1361.02(A).

33.    Rental permits may only be issued to property owners after the home at issue has undergone a government inspection ("A rental dwelling permit shall be issued by the Code Enforcement Official, <u>if upon inspection of the rental dwelling it is determined that the rental dwelling meets the requirements of this code</u>.").  See Section 1361.09(A).

34.    As to multi-family rental complexes, enforcement officers in the field wield the unfettered and arbitrary discretion as to whether to search each and every rental home, or just 25 percent of the rental homes in that complex.  Section 1361.02(B).

35.    Further, the Program authorizes city officials to conduct a *full* inspection of a rental home, curtilage, and outbuildings in response to a specific and narrow complaint unrelated to the entire home, or when

---

[5]    "Residential premises" is defined to include the entirety of any rental property:  indoors, outdoors, garages, basements, yards, etc.  see Section 1361.08(C).

a city official "has a valid reason to believe that **a** violation of the provisions of the code exist."  Section 1361.02(D).

36.    During these inspections, city officials search for evidence that can result in criminal charges and/or condemnation of the property.  Section 1361.02(D).

37.    Evidence adduced through inspection can further result in "suspension" of the city permit to rent the property.  Section 1361.02(D).

38.    The Code authorizing the inspections does not specify their scope.

39.    As to the scope of the rental inspections, the Code simply alludes to "periodic inspections," and suggest that agents may search for "any violation of the provisions of the code, and further that "A rental dwelling permit shall be issued by the Code Enforcement Official, if upon inspection of the rental dwelling it is determined that the rental dwelling meets the requirements of the code."  Sections 1361.02(A); 1361.02(D); 1361.09.

40.    To the extent that the scope of the search is implied by Section 1361.01 ("enforcement of the * * * Codified Ordinances of the City of Portsmouth"), a broad array of housing regulations apply.[6]  *See Exhibit D.*

41.    City agents maintain and apply a "City of Portsmouth Rental Dwelling Inspection Checklist."[7] *See Exhibit C.*

42.    The checklist enumerates 80 separate items, as disparate as "signage," "street numbers," "Door Hardware," "Floors/Wall/Ceilings," "lighting," and "room size."[8]

43.    Through its labels, the Checklist makes clear that a thorough search is to be made of the Exterior Premises, Common Egress Corridor, Interior, Kitchen, Hallways, Laundry, Basement, Bedrooms, Bathrooms, and "other."[9]

---

[6]    See Codified ordinances of the City of Portsmouth applying to rental properties, attached to Plaintiffs Verified Complaint as Exhibit D (Property Maintenance Code, violation of any provision of which is a second degree misdemeanor; Building Code, violation of any provision of which is a second degree misdemeanor; Housing Code, violations of any provision of which is a third degree misdemeanor on a daily basis; Unsafe and Unsanitary Building regulations - Chapter 1311; violation of which is a first degree misdemeanor; Nuisance regulations - Chapter 1313; violation of any provision of which is a first degree misdemeanor).
[7]    See Inspection Checklist, attached to Plaintiffs' Verified Complaint as Exhibit C.
[8]    Id.
[9]    Id.

44.     The Code further intrudes on the tenants' right of privacy, mandating that "every occupant of the dwelling . . . shall given the owner or his agent . . . access to *any part* of such dwelling or its premises at reasonable hours for the purpose of making such inspections. . . "

45.     The City charges "fees for issuing and renewing rental dwelling permits."

46.     Rental Dwelling Code fees are approximately $50 per unit annually.

47.     These fees appear to be entirely directed toward funding the costs of inspecting rental properties within the City.[10] *See Exhibit E.*

*48.*     Defendant Gedeon has stated to local media that "Anybody that paid before Dec. 31 (2012), that cost covers the annual inspection plus any re-inspections that we might have to do."[11]

49.     Defendant Gedeon has further stated to local media that "So far there have only been a handful of units that are really bad," Gedeon said. "I would say there is under 10. * * * The overall purpose of the program is to help improve the look and the quality of life in the city."[12]

*50.*     The City has targeted over 2,100 properties.[13]

                    ***Portsmouth's threat of enforcement against Plaintiffs to coerce inspection***

51.     On or about December 19, 2013, the City of Portsmouth transmitted letters to Plaintiffs threatening to charge them with a crime and condemn their property if they did not submit to an inspection. *See Exhibit B.*

52.     These letters, entitled ""**FAILURE TO SCHEDULE MANDATORY RENTAL INSPECTION**," indicate "[the City] has made several attempts to contact you . . . to schedule your required rental dwelling inspection. . . . Failure to respond to this request. . . is a violation of Section 1361.02 of the Rental Dwelling Code. . . Failure to comply with this order may result in an order to suspend the permit to

---

[10]     See Rental Licensing Financials, Fiscal Year 2013, attached to Plaintiffs' Verified Complaint as Exhibit E.
[11]     Portsmouth Daily Times, *Portsmouth Continues Rental Inspections*, by Frank Lewis. Available at http://www.portsmouth-dailytimes.com/view/full_story/22259360/article-Health-Department-continues-rental-inspections. Last checked June 18, 2014.
[12]     Id.
[13]     Id.

operate and/or implement the procedures for <u>Condemnation</u> by the Board of Health. . . . and possible issuance of <u>misdemeanor</u> citation. . ."[14]

*Plaintiffs' Status*

53.    In all cases, Plaintiffs use of their properties as rental properties pre-exists the existence of the Rental Dwelling Code requirements.

54.    Landlord-Plaintiffs maintain standing to bring this action because if they do not consent to a warrantless search of their property they are faced with (1) criminal charges and fines; and/or (2) loss of all rental income related to their Portsmouth properties.

55.    The City of Portsmouth inspected and searched each of Plaintiffs' properties located in Portsmouth between December of 2012 and April of 2014.

56.    After inspection, no exigent risks of public or private harm existed on any of the Plaintiffs' properties.[15]

57.    The City of Portsmouth coerced each and every such inspection of Plaintiffs:  (1) Plaintiffs consented to the searches only to avoid criminal liability and preserve their right to continue renting out their properties; and (2) no Plaintiff voluntarily consented to any search of any of his or her properties.

58.    Plaintiffs now intend to refuse all further efforts by the City to (1) inspect their properties; and (2) collect fees from them to fund the inspection of their properties and others.

59.    As a consequence of this abstention, each Plaintiff is in imminent risk of facing criminal charges and/or loss of their property rights in response to this assertion of his or her Fourth Amendment rights.

60.    No tenant or neighbor of any of the Plaintiffs has ever complained to the City of Portsmouth regarding code violations or other nuisances at any of these properties, or by any of the Plaintiffs at other properties.

---

[14]    See City of Portsmouth Health Department letter to property owners re: Failure to Schedule Mandatory Rental Inspection, attached hereto as Exhibit B.

[15]    As to Mr. Howard, for instance, the City raised concerns over issues such as handrails and caulk around bathtubs.

61.     Meanwhile, Plaintiffs maintain no conditions at the these properties that would (1) give rise to the need for an emergency entry into those properties; or (2) vest the City with probable cause to believe that any Plaintiff maintains an interior code violation or other nuisance at this time.

62.     Plaintiffs currently maintain no substantive interior code violations within their rental properties.

63.     None of the Plaintiffs have ever been prosecuted or fined by the City of Portsmouth for maintaining interior code violations or other nuisances.

64.     Each Landlord-Plaintiff is contractually and statutorily obligated to provide their tenants with a fit and habitable property, free from any nuisances and/or other dangerous conditions, and understands and abides by these terms.[16]

65.     None of the Plaintiffs is currently in violation or has ever been found to be in violation of their contractual or statutory obligations.

66.     These Plaintiffs are, by all accounts, model property owners and landlords.

67.     In June of 2014, some or all of Defendants have contacted some or all of Plaintiffs and insisted on performing, within the next thirty to sixty days, further warrantless searches within some or all of Plaintiffs properties.

## DECLARATORY JUDGMENT AND INJUNCTION
### (28 U.S.C. § 2201, *et seq.*)

68.     Plaintiffs hereby  incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

69.     An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning Plaintiffs' rights under the United States Constitution.  A judicial declaration is necessary and appropriate at this time.

---

[16]     Landlord-Plaintiffs are bound by R.C. 5321.04, which states, *inter alia,* as follows*:* "a landlord who is a party to a rental agreement shall do all of the following:   (1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;  (2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;  (3) Keep all common areas of the premises in a safe and sanitary condition; (4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by the landlord * * *."

70.     A state actor is liable under 42 U.S.C. § 1983 if it took "action pursuant to official policy of some nature [that] caused a constitutional tort."[17]

71.     "[Governmental] liability may be imposed for a single decision by [government] policy makers under appropriate circumstances."[18]

72.     A state actor cannot constitutionally condition the receipt of a benefit, such as a rental permit, liquor license, or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights, particularly one's right to be free from unlimited warrantless searches of private property without probable cause.[19]

73.     Plaintiffs desire a judicial determination of their rights against Defendant as they pertain to Plaintiffs' right to be free from unlawful searches, coerced surrender of property rights and/or priviliges, and vague licensing requirements.

74.     In order to prevent violation of Plaintiffs' constitutional rights by Defendant, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and FED. R. CIV. P. 57, declaring unconstitutional, facially and as-applied here, all relevant portions of the City of Portsmouth, Ohio Rental Dwelling Code, as well as Defendants' enforcement policies, practices, and actions related to the Rental Dwelling Code.

75.     Furthermore, pursuant to 28 U.S.C. § 2202 and FED. R. CIV. P. 65, it is appropriate and hereby requested that this Court issue preliminary and permanent injunctions prohibiting the Defendants from enforcing their search policies and all policies, practices, and conduct reliant on and related to the Rental Dwelling Code's search policies, including but not limited to the Rental Dwelling Code's search fees and

---

[17]     *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).

[18]     *Id.* at 480.

[19]     Id., citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech."); *Keyishian v. Board of Regents,* 385 U.S. 589, 606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967) (quoting *Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963)) ("It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege.").

permitting process, to the extent they are unconstitutional, in order to prevent the ongoing violation of Plaintiffs' constitutional rights.

## <u>COUNT I</u>
## VIOLATION OF RIGHT TO DUE PROCESS AND FREEDOM FROM UNCONSTITUTIOTIONAL SEARCHES PURSUANT TO THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### (42 U.S.C. § 1983)

76.     Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

### *Violation of the Unconstitutional Conditions Doctrine*

77.     The Supreme Court's "Unconstitutional Conditions" Doctrine arises from the Due Process guarantees articulated in the Fifth and Fourteenth Amendments to the United States Constitution.

78.     The Supreme Court of the United States has confirmed in a variety of contexts that "government may not deny a benefit to a person because he exercises a constitutional right."[20]

79.     The Supreme Court has further explained that "[t]hose cases reflect an overarching principle, known as the unconstitutional conditions doctrine, that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up."[21]

80.     The Supreme Court has consistently applied the Unconstitutional Conditions Doctrine within the context of land use permitting.[22]

81.     "[R]egardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right, the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them."[23]

---

[20]     *Regan v. Taxation With Representation of Wash.,* 461 U.S. 540, 545 (1983). See also, *e.g., Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,* 547 U.S. 47, 59–60 (2006); *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 78, 110 S.Ct. 2729 (1990). In *Perry v. Sindermann,* 408 U.S. 593 (1972), for example, a public college would violate a professor's freedom of speech if it declined to renew his contract because he was an outspoken critic of the college's administration. And in *Memorial Hospital v. Maricopa County,* 415 U.S. 250 (1974), a county impermissibly burdened the right to travel by extending healthcare benefits only to those indigent sick who had been residents of the county for at least one year.

[21]     *Koontz v St. Johns River Water Management Dist.,* 133 S.Ct. 2586, at 2594 (2013).

[22]     Id. (explaining that "land-use permit applicants are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to deny a permit that is worth far more than property it would like to take."), citing *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 547, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005); *Dolan,* 512 U.S., at 385, 114 S.Ct. 2309 (invoking "the well-settled doctrine of 'unconstitutional conditions' ").

[23]     *Koontz,* supra.

82.     Further, the right to rent property in Ohio, like the right to exclude others from private property, is not merely a "government benefit," but rather, is an extension of one's private property rights - -  rights recognized by the Ohio Constitution and Ohio Supreme Court as "fundamental."

83.     Defendants imminently threaten to pressure Plaintiffs into forfeiting their Fourth Amendment rights by, in response to the exercise of those rights, (1) withholding newly-required rental permits needed to rent homes in Portsmouth and/or (2) prosecuting Plaintiffs for criminal violations, should they rent their homes without newly-required rental permits.

84.     Defendants burden Plaintiffs' Fourth Amendment rights by operation of law, through maintaining and enforcing the Rental Dwelling Code.

### Violation of the Fourth Amendment's Search and Seizure Clause

85.     The Fourth Amendment provides in relevant part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

86.     The Fourth Amendment indicates with some precision the places and things encompassed by its protections: persons, **houses**, papers, and effects.

87.     The Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: When "Government obtains information by physically intruding" on persons, houses, papers, or effects, "a 'search' within the original meaning of the Fourth Amendment" has "undoubtedly occurred."[24]

88.     The Supreme Court has declared warrantless searches "*per se* unreasonable."[25]

89.     Since *Camara v. Mun. Court of City and County of San Francisco* and *See v. City of Seattle*, each decided in 1967, building code search statutes have been held unconstitutional unless they require a search warrant supported by administrative probable cause.[26]

---

[24]     *United States v. Jones,* 132 S.Ct. 945, 950–951, n. 3 (2012).
[25]     *Mincey v. Arizona,* 437 U.S. 385, 390 (1978) (internal quotation marks omitted); see *Groh v. Ramirez,* 540 U.S. 551, 559 (2004).
[26]     387 U.S. 523 (1967).

90.     *Camara* held that administrative inspections are significant intrusions on Fourth Amendment rights for which warrants generally are required.

91.     *Camara* further held that warrantless searches of residential rental property by municipal inspectors violated the Fourth Amendment protection against unreasonable searches and seizures.[27]

92.     In *See v. City of Seattle*,[28] the Supreme Court held that, like the search of a private home, the search of a business is presumptively unreasonable if conducted without a warrant, as a businessman's Fourth Amendment guarantees are "placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant,"[29] as, "[i]t is untenable that the ban on warrantless searches was not intended to shield places of business as well as of residence."[30]

93.     In *Hodgins v. U.S. Department of Agriculture,* the Sixth Circuit Court of Appeals held "for <u>warrantless</u> searches to be justifiable under a regulatory scheme, the object of the search must be something that can be <u>quickly hidden</u>, moved, disguised, or altered beyond recognition, so that only a surprise inspection could be expected to catch the violations.  On the other hand, if a regulation is <u>similar to a building code</u> (as in *See v. Seattle*), where violations will be harder to conceal, the need for surprise will be less pressing, and warrantless searches will more likely be unconstitutional."[31]

94.     An exception to the warrant requirement has been recognized for searches of pervasively or closely regulated industries.[32]

95.     Plaintiffs are not doing business in a "pervasively or closely regulated industry."

96.     The Sixth Circuit Court of Appeals has concluded that even "sexually oriented businesses" such as "adult cabarets" do not qualify as "pervasively or closely regulated businesses."

---

[27]     Id., at 528.
[28]     Id., at 541.
[29]     Id., at 543.
[30]     *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312 (1978).
[31]     238 F.3d 421 (2000).
[32]     *See New York v. Burger,* 482 U.S. 691 (1987) (junkyard industry); *Donovan v. Dewey,* 452 U.S. 594 (1981) (coal mining); *United States v. Biswell,* 406 U.S. 311 (1972) (firearms); *Colonnade Catering Corp. v. United States,* 397 U.S. 72 (1970) (liquor); *see also United States v. Acklen,* 690 F.2d 70 (6th Cir.1982) (pharmacies); *Marshall v. Nolichuckey Sand Co.,* 606 F.2d 693 (6th Cir.1979) (sand and gravel industry), *cert. denied,* 446 U.S. 908 (1980).

97.     Even if Plaintiffs were operating in such an industry, in *New York v. Burger,* the Supreme Court enunciated three criteria that must be met before any such warrantless inspection or search is constitutionally acceptable:  "First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made.  Second, the warrantless inspections must be 'necessary to further [the] regulatory scheme.' * * * Finally, 'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.'"

98.     The Rental Dwelling Code's inspection requirement is warrantless.

99.     A rental home owner's rental property is (1) a "house," as specified in the Fourth Amendment; and (2) at least equivalent to the "commercial property" held to be entitled to Fourth Amendment protection.

100.    The Rental Dwelling Code's inspection requirement, as a physical intrusion into a home to collect information that can later be used in a criminal prosecution, is a "search," as contemplated by the Fourth Amendment.

101.    The warrantless inspection of rental homes located within the City of Portsmouth is not "necessary to further the regulatory scheme"[33] here:  the City could operate a complaint-driven scheme, one that relies upon probable cause, or one that enlists property owners' use of private building inspectors.

102.    The Rental Dwelling Code searches violates Plaintiffs' right to be free from unreasonable searches by (1) coercing property owners' consent to such searches, and (2) violating tenants' reasonable expectation of privacy, while (3) maintaining no warrant requirement.

### *Violation of the Fourth Amendment's Warrant Clause*

103.    The second clause of the Fourth Amendment affirms "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

104.    The Fourth Amendment to the United States Constitution guarantees Plaintiffs the right to refuse warrantless government inspections of their home unless the government first secures a valid administrative

---

[33]     See *McLaughlin v. Kings Island, Div. of Taft Broadcasting Co*. 849 F.2d 990 (6th Cir. 1988).

search warrant issued by a neutral party authorized to issue an administrative search warrant, or unless an emergency exists.

105. The Defendants' Rental Dwelling Code does not authorize Defendant City of Portsmouth to obtain a warrant to search Plaintiffs' houses because, *inter alia,* the regulatory scheme (1) does not make provision for a warrant to be obtained; (2) is not predicated on neutral principles; (3) is tantamount to a general warrant inviting an open search; and (4) does not require probable cause.

106. Defendants' Rental Dwelling Code is not predicated on neutral principles because it arbitrarily discriminates against rental homes, while refraining from inspecting owner-occupied properties of any kind, irrespective of the properties' conditions.

107. The actions of Defendants Smith and Gedeon were the direct and proximate result of the policy, practice and custom of the City of Portsmouth as adopted and implemented by Defendants.

## COUNT II
## VIOLATION OF RIGHT TO EQUAL PROTECTION PURSUANT TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
## (42 U.S.C. § 1983)

108. Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

109. The Equal Protection Clause of the Fourteenth Amendment commands that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

110. The Equal Protection Clause prohibits states from making distinctions that either (1) burden a fundamental right, (2) target a suspect classification, or (3) intentionally treat one differently from others similarly situated without any rational basis for the difference. *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir.2005).

111. To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.,* 470 F.3d 286, 299 (6th Cir.2006).

16

112.    The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes.  *McLaughlin v. State of Florida*, 379 U.S. 184, 189—190.  It also imposes a requirement of some rationality in the nature of the class singled out.

113.    The Equal Protection Clause further requires that, in defining a class subject to legislation, the distinctions that are drawn have "some relevance to the purpose for which the classification is made."  *Baxstrom v. Herold*, 383 U.S. 107, 111; *Carrington v. Rash*, 380 U.S. 89, 93; *Louisville Gas Co. v. Coleman*, 277 U.S. 32, 37; *Royster Guano Co. v. Commonwealth of Virginia*, 253 U.S. 412, 415.

114.    Governmental classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily, and without any such basis," as "arbitrary selection can never be justified by calling it classification."  Id., see also *Atchison, T. & S.F.R. Co. v. Matthews*, 174 U.S. 96, 104-105; *American Sugar Ref. Co. v. Louisiana*, 179 U.S. 89.

115.    "Simply stated, the Equal Protection Clauses require that individuals be treated in a manner similar to others in like circumstances."  *McCrone v. Bank One Corp.,* 107 Ohio St.3d 272, ¶ 6.

116.    Courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose-in this case.

117.    The City of Portsmouth professes that the purpose of the Code "is to protect the public health, safety and welfare of occupants in <u>all</u> rental dwellings * * *."

118.    Despite its professed purpose, as to multi-family rental complexes consisting of six or more units, enforcement officers in the field wield the unfettered and arbitrary discretion to exempt from search up to 75 percent of the rental homes in that complex.  Section 1361.02(B).

119.    None of the Plaintiffs own a multi-unit dwelling of greater than six units within the City of Portsmouth.

120.    Plaintiffs' rental properties are primarily single family homes.

121.    Those who rent apartments and those who rent homes are similarly situated.

17

122.   Defendant City of Portsmouth has aggrandized itself with the power to search each and every one of Plaintiffs' properties, while exempting 75 percent of the rental properties of other similarly situated rental property owners.

123.   The Rental Dwelling Code search requirement is arbitrary and is not predicated on neutral principles because it arbitrarily discriminates against single family rental homes and tenants of single family rental homes, while refusing to inspect either (1) all of multi-family rental properties; or (2) owner-occupied properties of any kind.

124.   The singling out of Plaintiffs' properties, and other single-family rental dwellings, while ignoring up to 75 percent of apartment rental dwellings and owner-occupied homes, is neither necessary nor rationally related to a legitimate government purpose.

125.   There is neither a necessary nor even a rational basis for classifying single family rental homes and their owners and tenants as subject to an intrusive and comprehensive government search, whether with or without a warrant, while entirely exempting 75 percent of multi-family rental properties and/or owner-occupied properties and their owners and occupants.

126.   The Rental Dwelling Code burdens Plaintiffs' fundamental Fourth Amendment rights while exempting similarly-situated rental property owners from similar burdens.

127.   The mandates of the Rental Dwelling Code violate Plaintiffs' right to equal protection of the law, both on their face and as applied to these plaintiffs.

## COUNT III
## UNJUST ENRICHMENT

128.   Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

129.   Defendant City of Portsmouth has acquired and/or is in possession of funds that it is not entitled to retain.

130.   A suit seeking the return of specific funds wrongfully collected or held by a state actor may be maintained in equity. *Santos v. Ohio Bur. of Workers' Comp.,* 101 Ohio St.3d 74, syllabus. *Accord Judy v. Ohio*

18

*Bur. of Motor Veh.,* 100 Ohio St.3d 122; *Ohio Hosp. Assn. v. Ohio Dept. of Human Serv.,* 62 Ohio St.3d 97 (1991).

131. Unjust enrichment exists when there is: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (i.e., the "unjust enrichment" element).

132. Ohio law does not require that the benefitted party act improperly in some fashion before an unjust enrichment claim can be upheld; instead, unjust enrichment can result "from a failure to make restitution where it is equitable to do so. That may arise when a person has passively received a benefit which it would be unconscionable for him to retain" without paying compensation. (Citations omitted.) *Advantage Renovations, Inc. v. Maui Sands Resort, Co., L.L.C.,* 2012-Ohio-1866, ¶ 33.

133. Through its inspection and permitting fee assessments, Defendant City of Portsmouth has acquired funds rightfully belonging to Plaintiffs and others.

134. Defendant acquired these funds to fund unconstitutional searches of Plaintiffs' properties.

135. It would be unconscionable for the City of Portsmouth to retain and/or abstain from returning permitting fees acquired from Plaintiffs and others.

## CONCLUSION

136. Criminal punishment is an irreparable harm.

137. Loss of constitutionally-protected Fourth, Fifth, and Fourteenth Amendment rights and constitutionally-protected property rights causes irreparable harm.

138. Enforcement of the constitutional rights specified herein is in the public interest.

139. Defendants' enforcement of the Rental Dwelling Code violates the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by imposing an unconstitutional condition upon Plaintiffs' lawful exercise of their property rights.

140.    The Code is unconstitutional as applied to Plaintiffs - - property owners who operated rental homes prior to the advent of the Rental Dwelling Code, and have not created any dangerous conditions or other emergencies on their property.

141.    The Code's search requirement is unconstitutional on its face.

142.    The Code's search requirement cannot be severed from the Code's "permit fee" and "permitting" requirements.

143.    The unconstitutional portions of the Code cannot be severed from the Code's lawful portions.

144.    The Rental Dwelling Code fails to meet the requirements necessary to obtain a search warrant.

145.    As a proximate result of Defendants' policies and practices described above, Plaintiffs face imminent threat of irreparable injury and will continue to suffer irreparable injury, in that they will be deprived of their rights under the Fourth, Fifth, and Fourteenth Amendment of the Constitution.

146.    In order to prevent further violation of Plaintiffs' constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. 2201 and Fed. Rule of Civil Procedure 57, declaring the City of Portsmouth's enforcement of the Rental Dwelling Code against Plaintiffs to be unconstitutional.

147.    Pursuant to 28 U.S.C. 2202 and Fed Rule of Civil Procedure 65, it is appropriate and hereby requested that this Court issue a Temporary Restraining Order and preliminary and permanent injunction enjoining the City of Portsmouth, Ohio from enforcing the Rental Dwelling Code against Plaintiffs.

148.    As a direct and proximate result of the Rental Dwelling Code's mandates and punishments, alongside the threats made by Defendants Smith and Gedeon, Plaintiffs' constitutional rights under the Fourth, Fifth, and Fourteenth Amendments have been violated and Plaintiffs have suffered injury and damages, insofar as they have been forced to endure and fund unlawful government searches of their houses.

149.    The actions of Defendants Smith and Gedeon were the direct and proximate result of the policy, practice and custom of the City of Portsmouth as adopted and implemented by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and that the Court:

(1) Declare that the search provision in the City of Portsmouth Rental Dwelling Code authorizing warrantless searches without probable cause is unconstitutional, both facially and as applied to Plaintiffs;

(2) Declare that the provisions of the Rental Dwelling Code wholly reliant upon the unconstitutional search, including but not limited to the monetary extraction for inspections and the permit requirement, violate Plaintiffs' Fourth Amendment rights;

(3) Declare that the Rental Dwelling Code is insufficient, without more, to serve as a basis for the City to obtain an administrative warrant;

(4) Declare that through the imposition of monetary assessments on Plaintiffs and others, precipitated by the Rental Dwelling Code, Defendant City of Portsmouth has been and continues to be unjustly enriched;

(5) Enjoin Defendants from directly enforcing the Rental Dwelling Code's warrantless search requirement;

(6) Enjoin Defendants from indirectly enforcing the Rental Dwelling Code's warrantless search requirement by criminally prosecuting Plaintiffs, stripping them of the right to rent their property, or otherwise;

(7) Enjoin Defendants from attempting to seek and obtain a warrant, predicated on the Rental Dwelling Code, to search Plaintiffs' properties;

(8) Mandate the return of Rental Dwelling Code funds paid by Plaintiffs and others to Defendant City of Portsmouth, to the extent that the City has been unjustly enriched;

(9) Pursuant to 42 U.S.C. §1988 and other applicable law, award Plaintiffs their costs and expenses incurred in bringing this action, including their reasonable attorneys' fees;

(10)    Award nominal damages against Defendants and in favor of Plaintiffs to compensate Plaintiffs

for violations of their constitutional rights;

(11)    Reimburse Plaintiffs for amounts they have paid, in inspection fees related to unconstitutional

inspections, to Defendant City of Portsmouth;

and

(12)    Grant such other and further relief as the Court deems equitable, just, and proper.


Respectfully submitted,

*/s/   Maurice A. Thompson*
Maurice A. Thompson (0078548)
1851 Center for Constitutional Law
208 E. State Street
Columbus, Ohio 43215
Tel: (614) 340-9817
Fax: (614) 365-9564
MThompson@OhioConstitution.org


Justin C. Walker (0080001)
Finney Law Firm, LLC
4270 Ivy Pointe Boulevard, Suite 225
Cincinnati, Ohio  45245
(513) 943-6660 phone
(513) 943-6669 fax
*Justin@Finneylawfirm.com*

**VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the factual statements in the foregoing Complaint concerning myself, my activities, and my intentions are true and correct.

Executed this 17 day of June 2014.

Ronald Baker
Ronald Baker

Laura A Lyon
Notary Public, State of Ohio
My Commission Expires 02/11/2018

**VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the factual statements in the foregoing Complaint concerning myself, my activities, and my intentions are true and correct.

Executed this 17 day of June 2014.

Nancy Ross
Nancy Ross

Laura A Lyon
Notary Public, State of Ohio
My Commission Expires 02/11/2018

**VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the factual statements in the foregoing Complaint concerning myself, my activities, and my intentions are true and correct.

Executed this 17 day of June 2014.

Thomas Howard

Laura A Lyon
Notary Public, State of Ohio
My Commission Expires 02/11/2018

**VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the factual statements in the foregoing Complaint concerning myself, my activities, and my intentions are true and correct.

Executed this 17 day of June 2014.

Darren Oliver

Laura A Lyon
Notary Public, State of Ohio
My Commission Expires 02/11/201