UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES RONALD BAKER,
NANCY ROSS,
THOMAS HOWARD,
DARREN OLIVER,
BAKER FAMILY HOLDINGS, LLC,
RADIANT SALES, INC.,
HOWARD, LLC,
and
OLIVER II PROPERTIES, LLC,

ORIGINAL

Plaintiffs,

v.                                    Case No. 1:14-cv-512

CITY OF PORTSMOUTH, OHIO,
CHRISTOPHER S. SMITH, in his official
capacity as "Health Commissioner," City of
Portsmouth,
and
ANDREW L. GEDEON, in his official
capacity as Director of Environmental
Health City of Portsmouth, and in his
individual capacity,

Defendants.

DEPOSITION OF NANCY ROSS

On the 31st day of October, 2014, beginning
at 2:17 p.m., at 728 Second Street, Portsmouth, Ohio,
before Erin E. Kincaid, Court Reporter and Notary Public
in and for the State of Ohio, appeared Nancy Ross, who,
being by me first duly sworn, gave her oral deposition
in the causes, pursuant to notice of counsel.

BETLER'S REPORTING & LEGAL VIDEO SERVICES, LLC
VIDEO CONFERENCING CENTER
523 SEVENTH STREET
HUNTINGTON, WEST VIRGINIA 25701
(606) 329-2154 * (304) 522-9637 * (304) 345-9891

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES RONALD BAKER,
NANCY ROSS,
THOMAS HOWARD,
DARREN OLIVER,
BAKER FAMILY HOLDINGS, LLC,
RADIANT SALES, INC.,
HOWARD, LLC,
and
OLIVER II PROPERTIES, LLC,

                    Plaintiffs,

v.                          Case No. 1:14-cv-512

CITY OF PORTSMOUTH, OHIO,
CHRISTOPHER S. SMITH, in his official
capacity as "Health Commissioner," City of
Portsmouth,
and
ANDREW L. GEDEON, in his official
capacity as Director of Environmental
Health City of Portsmouth, and in his
individual capacity,

               Defendants.


                DEPOSITION OF NANCY ROSS

        On the 31st day of October, 2014, beginning
at 2:17 p.m., at 728 Second Street, Portsmouth, Ohio,
before Erin E. Kincaid, Court Reporter and Notary Public
in and for the State of Ohio, appeared Nancy Ross, who,
being by me first duly sworn, gave her oral deposition
in the causes, pursuant to notice of counsel.


        BETLER'S REPORTING & LEGAL VIDEO SERVICES, LLC
                VIDEO CONFERENCING CENTER
                    523 SEVENTH STREET
            HUNTINGTON, WEST VIRGINIA  25701
    (606) 329-2154 * (304) 522-9637 * (304) 345-9891

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014

```
APPEARANCES:

                    On behalf of the Plaintiffs:

                    Maurice A. Thompson, Esq.

                    1851 Center for Constitutional Law

                    208 East State Street

                    Columbus, Ohio 43215

                    614-340-9817

                    MThompson@OhioConstitution.org

                    On behalf of the Defendants:

                    John W. Hust, Esq.

                    SCHROEDER, MAUNDRELL, BARBIERE & POWERS

                    5300 Socialville-Foster Road, Suite 200

                    Mason, Ohio 45040

                    513-583-4200

                    JHust@smbplaw.com

Also present:       James Baker

                    Thomas Howard

                    Darren Oliver

                    Christopher Smith

                    Andrew Gedeon
```

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014                                    Page 3

I N D E X

EXAMINATION OF THE WITNESS:                        PAGE

By Mr. Hust                                        04

DEPOSITION EXHIBITS:                               PAGE

Defendants' Exhibit No. 10                         05

Defendants' Exhibit No. 11                         11

Defendants' Exhibit No. 12                         20

Reporter's Certification:                          25

 1              NANCY ROSS, called as a witness, having been

 2      first duly sworn, deposed as follows:

 3                           EXAMINATION

 4      BY MR. HUST:

 5          Q.    Good afternoon.  I'm --

 6          A.    Good afternoon.

 7          Q.    -- John Hust, as you know.  And I represent the

 8      city as well as Mr. Smith and Mr. Gedeon.

 9                Could you state your full name for us?

10          A.    My name is Nancy Ross, R-O-S-S.

11          Q.    All right.  And, Ms. Ross, you are the Nancy

12      Ross that's a plaintiff in this case?

13          A.    I am.

14          Q.    Among the plaintiffs.

15          A.    Uh-huh.

16          Q.    And there is also a company listed in the

17      complaint called Radiant, R-A-D-I-A-N-T, Sales, Inc.

18          A.    Uh-huh.

19          Q.    Is that your company?

20          A.    That's right.  Uh-huh.

21          Q.    And are you the sole owner or shareholder or

22      member?  Or --

23          A.    My husband died.  And I'm in the process of --

24      my son is in the process of being on it too.  But right

1   now, it's 99 percent me or 98 percent me.

2       Q.   Okay.  And Radiant Sales, Inc., is in the

3   business of residential rental property?

4       A.   That's one of our businesses.

5       Q.   Okay.  That was one of my questions, whether --

6       A.   Uh-huh.

7       Q.   -- Radiant was involved in any other activities

8   other than renting residential property.

9       A.   Yes.  Radiant Sales started with my company.  I

10  had a wholesale company.  And I think we incorporated in

11  '75.  And when I phased that business out, we phased in

12  the rental business.  And now we've bought some stores

13  that we have.  So --

14      Q.   Okay.  When you thought about phasing out and

15  then getting into the rental business, when was that?

16      A.   My very first rental I purchased was in 1970.

17  But I didn't put them in the company for -- for a long

18  time.

19      Q.   Okay.

20      A.   Yeah.  So I think it was probably - I don't

21  know - ten or 15 years ago.

22              MR. HUST:  This will be ten.

23              DEFENDANTS' EXHIBIT NO. 10

24          The document referred to was thereupon

```
 1   marked for identification as above indicated.

 2                MR. HUST:  Let's go off the record a

 3   second.

 4                (A recess was taken at 2:20 p.m., after

 5                which the proceedings were resumed at

 6                2:26 p.m. as follows:)

 7   BY MR. HUST:

 8       Q.   Ms. Ross, we can go back on the record now.

 9       A.   Okay.

10       Q.   Pick up where we left off.  I've marked for

11   Exhibit 10 -- as Exhibit 10 your answers to the

12   defendants' interrogatories and --

13       A.   Uh-huh.

14       Q.   -- requests for documents.  And if you could

15   turn to question number two under the interrogatories --

16       A.   Uh-huh.

17       Q.   -- I had a couple of follow-ups.  The way I

18   read the answers to number two, you have - let's see -

19   eight properties but a total of ten units; is that

20   right?  Two of them are duplexes?

21       A.   One, two, three, four, five, six, seven, eight

22   and then -- yeah.

23       Q.   So we've got --

24       A.   Uh-huh.  And two --
```

1    Q.    -- ten units.

2    A.    So --

3    Q.    Okay.

4    A.    Well, no.  That would be -- if you have eight

5    properties, and two and two would be 12, right?

6    Q.    Well, if I --

7    A.    If you --

8    Q.    Well, if you count them like starting at

9    Franklin Street, you've got one, two, three -- five,

10   six, eight, nine, ten.

11   A.    Okay.  Whatever.  It doesn't matter.  Whatever

12   -- whatever you've got.

13   Q.    Okay.  Well, let me -- maybe I can do it this

14   way too.  The property at 1503 Fifth Street --

15   A.    Is two units.

16   Q.    Right.  And the property at 3157 Walnut Street

17   is two units.

18   A.    Is two units.

19   Q.    Okay.  And the other units are single-family

20   units?

21   A.    And there's eight there.

22   Q.    Yeah.

23   A.    Okay.

24   Q.    All right.  And does Radiant Properties own any

1　other properties in the city of Portsmouth?

2　　A.　Not in the city.

3　　Q.　Okay.　How many units do you think you have

4　outside the city?

5　　A.　I take that back.　We do own some in the city,

6　but we're selling them on land contract.

7　　Q.　Oh, okay.

8　　A.　Okay.　And I can't -- I think -- I know one

9　other one, maybe two other ones.

10　　Q.　So the one or more that you're selling on land

11　contract in the city are not on this list --

12　　A.　Not --

13　　Q.　-- correct?

14　　A.　-- on this list, no.

15　　Q.　All right.　Down in Paragraph 2C, it says you

16　first heard of the ordinance through word of mouth.

17　　A.　Uh-huh.

18　　Q.　And do you recall from whom you heard?

19　　A.　No.　But -- I don't know.　I really don't know.

20　　Q.　Can't recall who?

21　　A.　I don't.　I might have -- I might have heard it

22　on the radio or I might have heard it --

23　　Q.　Do you --

24　　A.　-- from somebody.

1    Q.    I'm sorry.  I didn't mean to interrupt you.  Do

2  you know when you first heard it?

3    A.    Well, probably when I found out I was going to

4  have to pay something, that's probably when I first

5  became aware.  So, no, I don't -- I don't really know.

6    Q.    I see in answer to Interrogatory 2D at the

7  bottom of the page --

8    A.    Uh-huh.

9    Q.    -- when we asked the date each property was

10  inspected, you say all were inspected on February 18,

11  2014.  So I can safely conclude that none of your

12  properties were inspected in 2013?

13    A.    No, I don't think so.

14    Q.    Is it possible that they weren't inspected in

15  2013 because you didn't hear of the program until later

16  on?

17    A.    Oh, I think we just -- right at the end of the

18  year.

19    Q.    Uh-huh.

20    A.    And, you know, I honestly don't remember.  I

21  think we talked about December.  And we were right into

22  Christmas.  And I think we just set another date.

23    Q.    All right.  Now, when -- when you -- strike

24  that.

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014

Page 10

1          Did there come a point in time when you filled

2    out applications and paid the fees?

3    A.    Yes.

4    Q.    And would that have been toward the end of

5    2013?

6    A.    Yeah.  Like the 26th, the 27th or maybe the

7    31st.  Sometime in there.

8    Q.    All righty.  Did you do that in person at the

9    health department?

10   A.    Yeah.  I came down.  Uh-huh.

11   Q.    And just filled out --

12   A.    I don't remember filling out the paper.  But I

13   remember coming down and bringing the check in.  So I

14   must have -- if I had to have paperwork, I must have

15   done it at that time.  I don't remember it.

16   Q.    In the process of filling out the applications

17   and paying the fees, do you recall speaking to anybody

18   at the health department about the rental permit

19   program?

20   A.    I probably fussed a little bit.

21   Q.    Okay.  Do you remember who you fussed with?

22   A.    Huh-uh.

23   Q.    And why were you fussing?

24   A.    Because I didn't want to pay it.  In order to

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014

```
 1   operate at a profit, you have to watch your expenses.

 2              MR. HUST:  Okay.  Which number are we on

 3   now?

 4              COURT REPORTER:  11.

 5              DEFENDANTS' EXHIBIT NO. 11

 6              The document referred to was thereupon

 7   marked for identification as above indicated.

 8       Q.   Before we get to No. 11, after you paid the

 9   fees -- that day you remember taking the check, do you

10   remember any discussion on that day about scheduling

11   inspections?

12       A.   I probably asked when it was going to be.  But

13   I don't think anybody knew at that time.

14       Q.   Do you recall -- did someone contact you later?

15       A.   I'm pretty sure they did.  Because I called my

16   tenants -- I'm thinking they had to call me, or I

17   wouldn't have known to call the tenants.

18       Q.   Uh-huh.

19       A.   And then I got one of the guys that works for

20   one of the other companies to -- and he helps me some --

21   to go with -- with Andrew.

22       Q.   Okay.

23       A.   They did them all in one day.  And they had a

24   pretty full day, I think.
```

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014

Page 12

```
 1        Q.   All right.  Do you remember who that individual
 2   was that --
 3        A.   That I sent with him?
 4        Q.   Yes.
 5        A.   It was JR.  JR McCann.
 6        Q.   How do you spell his last name?
 7        A.   M-C-C-A-N-N.
 8        Q.   Oh, okay.  And does he work for you?  Or does
 9   he work --
10        A.   He works for my son sometimes.  And -- well, he
11   helps me.  He helps me too.
12        Q.   And what type of work does he help you with?
13        A.   Oh, when I can't get the furnace to come on, or
14   can't get my car to started.  Or --
15        Q.   So he's sort of a handyman --
16        A.   Yeah.
17        Q.   -- is that fair?
18        A.   Yeah.
19        Q.   All right.
20        A.   Have a flat tire.
21        Q.   So you didn't go on any of the inspections --
22        A.   No, I didn't.
23        Q.   -- yourself?
24        A.   Huh-uh.
```

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014

Page 13

```
 1        Q.    Okay.  Were you involved in setting them up
 2   with the tenants?
 3        A.    Yes.
 4        Q.    Scheduling?
 5        A.    Yes, I was.  Yeah.  I called every one of them.
 6        Q.    And let me show you what we've marked for
 7   identification as Defendants' No. 11.
 8        A.    Uh-huh.
 9              MR. HUST:  Let me see if I have an extra
10   -- I might have an extra one here.  I ended up one
11   short, Maurice.  I'm sorry.
12              MR. THOMPSON:  That's fine.
13              MR. HUST:  Let me make sure I didn't stuff
14   it back in here.  Here we go.
15              MR. THOMPSON:  Thank you.
16        Q.    If you wouldn't mind taking a look at the
17   properties that are listed on the first two pages of
18   No. 11 --
19        A.    Uh-huh.
20              MR. HUST:  Did I give you one I wrote all
21   over?  Or do you have the clean one?
22              MR. THOMPSON:  There are some --
23              MR. HUST:  Yeah.
24              MR. THOMPSON:  -- markings on here.
```

1          MR. HUST:  Yeah.  Swap with you.

2     Q.    Number 11, on the first two pages, are those

3  properties that you or Radiant Sales own?

4     A.    Uh-huh.  So far.  Uh-huh.

5     Q.    It looks like the first three are duplexes.

6  Could it be that out of your properties there are

7  actually three duplexes?

8     A.    3172 Walnut Street was sold.

9     Q.    Oh, okay.

10    A.    And the man died.  And I took it back over.  So

11 I don't know if I had that listed or not.

12    Q.    Oh, okay.  That's right.  It's not on here.

13 Okay.

14          So when did you take it back -- that one back

15 over?

16    A.    I've had it in my possession a long time.  But

17 I haven't -- didn't have all the paperwork completed

18 with them.

19    Q.    Okay.  Now, attached as part of Exhibit 11 --

20 if you go to the beginning on the third page to the

21 end --

22    A.    Uh-huh.

23    Q.    -- you'll see these City of Portsmouth rental

24 dwelling inspection reports.

```
 1        A.    At the end.  Yeah, these.  Uh-huh.

 2        Q.    Do you recall receiving copies of these?

 3        A.    Yeah.  I don't know if JR brought them back

 4   with him that day or if they mailed them to me.  But we

 5   had a bunch of them.

 6        Q.    Now, if you look at the top -- I'm guessing

 7   they were mailed.  So do you see Andrew Gedeon's name?

 8        A.    Uh-huh.

 9        Q.    And then it says, Sent February 18 --

10        A.    Uh-huh.

11        Q.    -- 2014?

12              And then if you go down to the right-hand

13   column -- and pardon me for pointing -- you'll see

14   inspection date there.

15        A.    Uh-huh.

16        Q.    2/13.

17        A.    Uh-huh.

18        Q.    Does that help refresh your memory they were

19   probably mailed to you or --

20        A.    Okay.

21        Q.    -- faxed to you?

22        A.    All right.  Uh-huh.

23        Q.    But you did get them?

24        A.    Yeah.  I got them.
```

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014

Page 16

```
 1        Q.    Okay.

 2        A.    That's what we used -- that's what we worked

 3   with to repair them.

 4        Q.    Okay.  And did JR -- strike that.

 5             Did you receive instructions or information

 6   from the health department either directly or through JR

 7   how long you had to correct any --

 8        A.    Yeah.  He said --

 9        Q.    -- conditions?

10        A.    He said before the next inspection.  But I

11   understood the next inspection was going to be in just a

12   few months.  But it didn't matter.  We did it anyway --

13        Q.    Okay.

14        A.    -- either way.

15        Q.    So anything -- maybe I can just cover these

16   with just one question.

17        A.    Uh-huh.

18        Q.    The things that are listed on here that needed

19   attention, you took care of?

20        A.    Yeah, I did.  Uh-huh.

21        Q.    I noticed that some of the -- some of the units

22   were listed -- at least there's a Section 8?

23        A.    Uh-huh.  That's right up here on the front.

24        Q.    So regardless of whether they're still in
```

1    Section 8, from time to time you've participated in the

2    Section 8 program?

3        A.    I have.

4        Q.    And that program requires the property to be

5    inspected --

6        A.    Uh-huh.

7        Q.    -- does it not?

8        A.    Right.

9        Q.    Do you know how often it has to be inspected?

10       A.    I think it's once a year.  I honestly don't

11   remember.  But I think that's what it is.

12       Q.    Do you know if the city's -- the list of the

13   items on the city's inspection checklist are similar to

14   the HUD checklist?

15       A.    Similar, yes.

16       Q.    Is HUD more strict or about the same in terms

17   of what's inspected and what's --

18       A.    HUD is -- what word should I use?  If there's

19   something -- some kind of a problem, HUD gives you 30

20   days to fix it without any kind of penalty.

21       Q.    Okay.  And when -- when you were -- when you

22   received the inspection checklist, all you were asked to

23   do was to fix the items on --

24       A.    Uh-huh.

1    Q.    -- this list, correct?

2    A.    Uh-huh.

3    Q.    There was no penalty involved?

4    A.    No.

5    Q.    Okay.

6    A.    Not that I know of.

7    Q.    Did you ever have any conversations with anyone

8  with the health department about any potential

9  consequences of not participating in the rental permit

10 program?

11   A.    I don't remember it.  But I probably did.  But

12 I don't --

13   Q.    Did you ever receive any -- any letter from the

14 health department asking you to do certain things, and

15 upon failure, you'd be subject to any sort of --

16   A.    No.  I try to obey the laws.  And so I might

17 fuss, but I try to do what I'm supposed to do.

18   Q.    So, essentially, after the inspections were

19 done, you got the reports.  You made the repairs?

20   A.    We did.

21   Q.    Did you have any further contact with the

22 health department or the city after these inspections

23 that were done -- it looks like in February of --

24   A.    We have had contact.  But it doesn't -- it's

```
 1  not concerning this.
 2      Q.   Okay.  What were the other contacts about?
 3      A.   Oh, we had people dump some trash in my yard.
 4      Q.   And then somebody saw it and reported it to the
 5  city?
 6      A.   Uh-huh.
 7      Q.   And the city in turn reported it to you?
 8      A.   Well, actually, my neighbors reported it to me.
 9      Q.   Okay.
10      A.   And, anyway, I was very unhappy that somebody
11  else did it and the health department knows -- they've
12  got the license number of who did it.  But they still
13  want me to clean it up.
14      Q.   Okay.
15      A.   Which we've -- we're in the process of doing.
16      Q.   After you got the inspection reports, were you
17  ever contacted again by the health department to
18  schedule additional inspections?
19      A.   No.
20      Q.   So it sounds like, other than this trash
21  problem and -- other miscellaneous issue, you really
22  didn't have any contact with the health department
23  regarding the rental permit program --
24      A.   No.
```

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014

Page 20

```
 1        Q.    -- after you got the inspection reports?

 2        A.    No.   Huh-uh.

 3        Q.    Or I'm correct?   You have to say yes because

 4   sometimes we do double negatives.

 5              I'm correct that you didn't have any contact

 6   with the health department about the rental permit

 7   program after you received your inspection reports?

 8        A.    We did not have any --

 9        Q.    All right.

10        A.    -- further contact.

11                    MR. HUST:   Let me mark as 12 --

12                    DEFENDANTS' EXHIBIT NO. 12

13              The document referred to was thereupon

14   marked for identification as above indicated.

15        Q.    Ms. Ross, can you identify what I've marked as

16   Defendants' Exhibit 12?

17        A.    Okay.   You want me to tell that this is the

18   residential lease?   This is --

19        Q.    Yes.

20        A.    This is the form that we use for almost all of

21   them.

22        Q.    Is that sort of your standard form?

23        A.    That's a standard form --

24        Q.    Okay.
```

1    A.    -- yeah.  Uh-huh.

2    Q.    Regarding the properties listed in your answers

3  to interrogatories --

4    A.    Uh-huh.

5    Q.    -- or are on exhibit -- whichever one is

6  easiest.  Have you ever personally lived in any of those

7  properties?

8    A.    No.

9    Q.    Are those -- would you -- strike that.

10         Are those properties -- do you think -- let me

11  start over once more.

12         Do you think those properties were constructed

13  prior to 1950?

14    A.    Yes.

15    Q.    And the occupants -- I know it's not easy to

16  generalize.  But are they mostly families that live in

17  the single-family units?

18    A.    Yes.  Uh-huh.

19    Q.    How about the duplexes?  The same?

20    A.    Yes.

21    Q.    And when I say "families" -- some may have

22  children, some may not?

23    A.    Yes.

24    Q.    All right.  And you would agree with me that

1    the tenants who live on the properties have the right to

2    invite people onto the property for lawful purposes or

3    activities?

4        A.    Yes.

5        Q.    And similarly, as the landlord, you have the

6    right to go on the premises if you give the tenant 24

7    hours notice or some other reasonable notice, correct?

8        A.    Yes.

9        Q.    The tenant has -- unless you give them advance

10   notice, the tenants -- unless it was an emergency or

11   something, a tenant could refuse to let you on without

12   advance notice?

13       A.    Yes.

14       Q.    But, ultimately, you have the right to go on

15   the property?

16       A.    Yes.

17       Q.    Are any of the -- to your knowledge have any of

18   the -- or are any of the tenants engaging in any

19   commercial activity on the property?

20       A.    No, not that I know of.

21       Q.    Just give me one minute, and we may be finished

22   as well.

23       A.    Uh-huh.

24       Q.    Oh, just one other thing -- back on these

```
 1   inspection --

 2       A.   Uh-huh.

 3       Q.   I presume after the inspections, you may have

 4   spoken at least briefly with Mr. McCann about what

 5   happened with the inspections?

 6       A.   Oh, yeah.  He --

 7       Q.   Okay.

 8       A.   I had to work with him to know what to do.

 9       Q.   And when the inspection reports came, did you

10   discuss those with him?

11       A.   Yes.  Uh-huh.

12       Q.   Were there any items on here that you recall

13   that Mr. McCann felt maybe shouldn't have been on there

14   as items that needed correcting?

15       A.   I think we -- I think I asked a lot of

16   questions about why this and why that.

17       Q.   Okay.

18       A.   But some of the things, it's just obvious that

19   they need to be taken care of.

20       Q.   And you did that as you --

21       A.   Yes, we did.

22            MR. HUST:  Thank you.  I have no other

23   questions.  Appreciate your time.

24            (The deposition concluded at 2:46 p.m.)
```

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014

Page 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014

Page 25

STATE OF OHIO,
COUNTY OF SCIOTO, to-wit:


     I, Erin E. Kincaid, Court Reporter and a notary
public within and for the county and state aforesaid,
duly commissioned and qualified, do hereby certify that
the foregoing deposition of Nancy Ross, was taken by and
before me at the time and place specified in the caption
hereof, the said witness having been by me first duly
sworn.

     I do further certify that the said deposition was
correctly taken by me in stenotype notes, that the same
were accurately written out in full and reduced to
typewriting; and that said deposition is a true record
of the testimony given by said witness.

     I do further certify that I am neither attorney or
counsel for, not related to or employed by, any of the
parties to the action in which this deposition is taken,
and further that I am not a relative or employee of any
attorney or counsel employed by the parties hereto or
financially interested in this action.

     My commission expires September 14, 2015.

     Given under my hand this 7th day of November, 2014.

                              _____
                                   Erin E. Kincaid
                              Court Reporter and Notary Public

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014

Index: 10..cover

**1**

**10** 5:23 6:11
**11** 11:4,5,8 13:7,18 14:2,19
**12** 7:5 20:11,12,16
**15** 5:21
**1503** 7:14
**18** 9:10 15:9
**1950** 21:13
**1970** 5:16

**2**

**2/13** 15:16
**2013** 9:12,15 10:5
**2014** 15:11
**24** 22:6
**26th** 10:6
**27th** 10:6
**2:20** 6:4
**2:26** 6:6
**2:46** 23:24
**2C** 8:15
**2D** 9:6

**3**

**30** 17:19
**3157** 7:16
**3172** 14:8
**31st** 10:7

**7**

**75** 5:11

**8**

**8** 16:22 17:1,2

**9**

**98** 5:1
**99** 5:1

**A**

**activities** 5:7 22:3
**activity** 22:19
**additional** 19:18
**advance** 22:9,12
**afternoon** 4:5,6
**agree** 21:24
**Andrew** 11:21 15:7
**answers** 6:11,18 21:2
**applications** 10:2,16
**attached** 14:19
**attention** 16:19
**aware** 9:5

**B**

**back** 6:8 8:5 13:14 14:10,14 15:3 22:24
**beginning** 14:20
**bit** 10:20
**bottom** 9:7
**bought** 5:12
**briefly** 23:4
**bringing** 10:13
**brought** 15:3
**bunch** 15:5
**business** 5:3,11,12,15
**businesses** 5:4

**C**

**call** 11:16,17
**called** 4:1,17 11:15 13:5

**car** 12:14
**care** 23:19
**case** 4:12
**check** 10:13 11:9
**checklist** 17:13,14,22
**children** 21:22
**Christmas** 9:22
**city** 4:8 8:1,2,4,5,11 14:23 18:22 19:5,7
**city's** 17:12,13
**clean** 13:21 19:13
**column** 15:13
**commercial** 22:19
**companies** 11:20
**company** 4:16,19 5:9,10,17
**complaint** 4:17
**completed** 14:17
**conclude** 9:11
**concluded** 23:24
**conditions** 16:9
**consequences** 18:9
**constructed** 21:12
**contact** 11:14 18:21,24 19:22 20:5,10
**contacted** 19:17
**contacts** 19:2
**contract** 8:6,11
**conversations** 18:7
**copies** 15:2
**correct** 8:13 16:7 18:1 20:3,5 22:7
**correcting** 23:14
**count** 7:8
**couple** 6:17
**COURT** 11:4
**cover** 16:15

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014

Index: date..John

### D

**date**  9:9,22 15:14
**day**  11:9,10,23,24 15:4
**days**  17:20
**December**  9:21
**defendants'**  5:23 6:12 11:5 13:7 20:12,16
**department**  10:9,18 16:6 18:8,14,22 19:11,17,22 20:6
**deposed**  4:2
**deposition**  23:24
**died**  4:23 14:10
**directly**  16:6
**discuss**  23:10
**discussion**  11:10
**document**  5:24 11:6 20:13
**documents**  6:14
**double**  20:4
**duly**  4:2
**dump**  19:3
**duplexes**  6:20 14:5,7 21:19
**dwelling**  14:24

### E

**easiest**  21:6
**easy**  21:15
**emergency**  22:10
**end**  9:17 10:4 14:21 15:1
**ended**  13:10
**engaging**  22:18
**essentially**  18:18
**EXAMINATION**  4:3
**exhibit**  5:23 6:11 11:5 14:19 20:12,16 21:5
**expenses**  11:1
**extra**  13:9,10

### F

**failure**  18:15
**fair**  12:17
**families**  21:16,21
**faxed**  15:21
**February**  9:10 15:9 18:23
**fees**  10:2,17 11:9
**felt**  23:13
**filled**  10:1,11
**filling**  10:12,16
**fine**  13:12
**finished**  22:21
**fix**  17:20,23
**flat**  12:20
**follow-ups**  6:17
**form**  20:20,22,23
**found**  9:3
**Franklin**  7:9
**front**  16:23
**full**  4:9 11:24
**furnace**  12:13
**fuss**  18:17
**fussed**  10:20,21
**fussing**  10:23

### G

**Gedeon**  4:8
**Gedeon's**  15:7
**generalize**  21:16
**give**  13:20 22:6,9,21
**Good**  4:5,6
**guessing**  15:6
**guys**  11:19

### H

**handyman**  12:15

**happened**  23:5
**health**  10:9,18 16:6 18:8,14,22 19:11,17,22 20:6
**hear**  9:15
**heard**  8:16,18,21,22 9:2
**helps**  11:20 12:11
**honestly**  9:20 17:10
**hours**  22:7
**HUD**  17:14,16,18,19
**Huh-uh**  10:22 12:24 20:2
**husband**  4:23
**Hust**  4:4,7 5:22 6:2,7 11:2 13:9,13,20,23 14:1 20:11 23:22

### I

**identification**  6:1 13:7 20:14
**identify**  20:15
**incorporated**  5:10
**individual**  12:1
**information**  16:5
**inspected**  9:10,12,14 17:5,9,17
**inspection**  14:24 15:14 16:10,11 17:13,22 19:16 20:1,7 23:1,9
**inspections**  11:11 12:21 18:18,22 19:18 23:3,5
**instructions**  16:5
**interrogatories**  6:12,15 21:3
**Interrogatory**  9:6
**interrupt**  9:1
**invite**  22:2
**involved**  5:7 13:1 18:3
**issue**  19:21
**items**  17:13,23 23:12,14

### J

**John**  4:7

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014

Index: JR..put

**JR** 12:5 15:3 16:4,6

**K**

**kind** 17:19,20
**knew** 11:13
**knowledge** 22:17

**L**

**land** 8:6,10
**landlord** 22:5
**lawful** 22:2
**laws** 18:16
**lease** 20:18
**left** 6:10
**letter** 18:13
**license** 19:12
**list** 8:11,14 17:12 18:1
**listed** 4:16 13:17 14:11 16:18, 22 21:2
**live** 21:16 22:1
**lived** 21:6
**long** 5:17 14:16 16:7
**lot** 23:15

**M**

**M-c-c-a-n-n** 12:7
**made** 18:19
**mailed** 15:4,7,19
**make** 13:13
**man** 14:10
**mark** 20:11
**marked** 6:1,10 11:7 13:6 20:14,15
**markings** 13:24
**matter** 7:11 16:12
**Maurice** 13:11
**Mccann** 12:5 23:4,13

**member** 4:22
**memory** 15:18
**mind** 13:16
**minute** 22:21
**miscellaneous** 19:21
**months** 16:12
**mouth** 8:16

**N**

**Nancy** 4:1,10,11
**needed** 16:18 23:14
**negatives** 20:4
**neighbors** 19:8
**notice** 22:7,10,12
**noticed** 16:21
**number** 6:15,18 14:2 19:12

**O**

**obey** 18:16
**obvious** 23:18
**occupants** 21:15
**operate** 11:1
**order** 10:24
**ordinance** 8:16
**owner** 4:21

**P**

**p.m.** 6:4,6 23:24
**pages** 13:17 14:2
**paid** 10:2 11:8
**paper** 10:12
**paperwork** 10:14 14:17
**Paragraph** 8:15
**pardon** 15:13
**part** 14:19
**participated** 17:1

**participating** 18:9
**pay** 9:4 10:24
**paying** 10:17
**penalty** 17:20 18:3
**people** 19:3 22:2
**percent** 5:1
**permit** 10:18 18:9 19:23 20:6
**person** 10:8
**personally** 21:6
**phased** 5:11
**phasing** 5:14
**Pick** 6:10
**plaintiff** 4:12
**plaintiffs** 4:14
**point** 10:1
**pointing** 15:13
**Portsmouth** 8:1 14:23
**possession** 14:16
**potential** 18:8
**premises** 22:6
**presume** 23:3
**pretty** 11:15,24
**prior** 21:13
**problem** 17:19 19:21
**proceedings** 6:5
**process** 4:23,24 10:16 19:15
**profit** 11:1
**program** 9:15 10:19 17:2,4 18:10 19:23 20:7
**properties** 6:19 7:5,24 8:1 9:12 13:17 14:3,6 21:2,7,10,12 22:1
**property** 5:3,8 7:14,16 9:9 17:4 22:2,15,19
**purchased** 5:16
**purposes** 22:2
**put** 5:17

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014

Index: question..unhappy

## Q

question 6:15 16:16

questions 5:5 23:16,23

## R

R-a-d-i-a-n-t 4:17

R-o-s-s 4:10

Radiant 4:17 5:2,7,9 7:24 14:3

radio 8:22

read 6:18

reasonable 22:7

recall 8:18,20 10:17 11:14 15:2 23:12

receive 16:5 18:13

received 17:22 20:7

receiving 15:2

recess 6:4

record 6:2,8

referred 5:24 11:6 20:13

refresh 15:18

refuse 22:11

remember 9:20 10:12,13,15, 21 11:9,10 12:1 18:11

rental 5:3,12,15,16 10:18 14:23 18:9 19:23 20:6

renting 5:8

repair 16:3

repairs 18:19

reported 19:4,7,8

REPORTER 11:4

reports 14:24 18:19 19:16 20:1,7 23:9

represent 4:7

requests 6:14

requires 17:4

residential 5:3,8 20:18

resumed 6:5

right-hand 15:12

righty 10:8

Ross 4:1,10,11,12 6:8 20:15

## S

safely 9:11

Sales 4:17 5:2,9 14:3

schedule 19:18

scheduling 11:10 13:4

Section 16:22 17:1,2

selling 8:6,10

set 9:22

setting 13:1

shareholder 4:21

short 13:11

show 13:6

similar 17:13,15

similarly 22:5

single-family 7:19 21:17

Smith 4:8

sold 14:8

sole 4:21

son 4:24 12:10

sort 18:15 20:22

sounds 19:20

speaking 10:17

spell 12:6

spoken 23:4

standard 20:22,23

start 21:11

started 5:9 12:14

starting 7:8

state 4:9

stores 5:12

Street 7:9,14,16 14:8

strict 17:16

strike 9:23 16:4 21:9

stuff 13:13

subject 18:15

supposed 18:17

Swap 14:1

sworn 4:2

## T

taking 11:9 13:16

talked 9:21

ten 5:21,22 6:19 7:1,10

tenant 22:6,9,11

tenants 11:16,17 13:2 22:1, 10,18

terms 17:16

thing 22:24

things 16:18 18:14 23:18

thinking 11:16

THOMPSON 13:12,15,22,24

thought 5:14

time 5:18 10:1,15 11:13 14:16 17:1 23:23

tire 12:20

top 15:6

total 6:19

trash 19:3,20

turn 6:15 19:7

type 12:12

## U

Uh-huh 4:15,18,20 5:6 6:13, 16,24 8:17 9:8,19 10:10 11:18 13:8,19 14:4,22 15:1,8,10,15, 17,22 16:17,20,23 17:6,24 18:2 19:6 21:1,4,18 22:23 23:2,11

ultimately 22:14

understood 16:11

unhappy 19:10

JAMES RONALD BAKER v. CITY OF PORTSMOUTH
Ross, Nancy on 10/31/2014

Index: units..years

**units**  6:19 7:1,15,17,18,19,20
  8:3 16:21 21:17

---

### W

**Walnut**  7:16 14:8

**watch**  11:1

**whichever**  21:5

**wholesale**  5:10

**word**  8:16 17:18

**work**  12:8,9,12 23:8

**worked**  16:2

**works**  11:19 12:10

**wrote**  13:20

---

### Y

**yard**  19:3

**year**  9:18 17:10

**years**  5:21