IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES RONALD BAKER, et al., | : | Case No. 1:14cv512 |
| | : | |
| Plaintiffs, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | AMENDED ORDER GRANTING |
| | : | PLAINTIFFS' MOTION FOR |
| CITY OF PORTSMOUTH, et al., | : | PARTIAL SUMMARY JUDGMENT |
| | : | (Doc. 26) AND GRANTING IN PART |
| Defendants. | : | AND DENYING IN PART |
| | : | DEFENDANTS' MOTION FOR |
| | : | SUMMARY JUDGMENT (Doc. 20). |

Plaintiffs bring this action against Defendants under 42 U.S.C. § 1983, alleging violations of their rights to due process and from unconstitutional searches in connection with the City of Portsmouth, Ohio's rental code. Plaintiffs also bring a claim for unjust enrichment in an effort to recover inspection fees contributed to the City pursuant to the code. This matter is currently before the Court on Defendants' Motion for Summary Judgment (Doc. 20) and Plaintiffs' Motion for Partial Summary Judgment (Doc. 26).[1] For the reasons that follow the Court grants Plaintiffs' Motion for Partial Summary Judgment and grants in part and denies in part Defendants' Motion for Summary Judgment.

## I.    BACKGROUND[2]

As an older city, much of the City of Portsmouth, Ohio's housing stock is aging. The median year for home construction in Portsmouth is 1948, seventeen years older than that for all of Ohio (1965) and twenty-seven years older than for the United States (1975). Following the

---

[1] The Southeastern Ohio Legal Services has also filed an amicus curiae response to the summary judgment of both parties. (Doc. 31.)

[2] Except as otherwise indicated, background facts are drawn from Defendants' Proposed Undisputed Facts (Doc. 20-2, at PageID 668–70.) Plaintiffs did not respond to Defendants' Proposed Undisputed Facts nor did they submit Proposed Undisputed Facts of their own.

2008 financial crisis, many single-family homes and rental properties in the city were foreclosed upon and/or abandoned.  Many of these homes subsequently became rental properties—a portion of which sat vacant for extended periods of time.  Although the City is unsure if the properties have been maintained or repaired to code standards, a majority of the complaints it has received regarding building code compliance matters relate to rental units.  According to Christopher Smith, the City's Health Commissioner, many families are living in unsafe and unsanitary conditions, unaware of their legal rights regarding housing conditions and/or afraid to complain about such conditions.

In 2012, the Portsmouth adopted its Rental Dwelling Code (hereinafter the "RDC" or the "Code").  The stated scope and intent of the Code is as follows:

> This code is to protect the public health, safety and welfare of occupants in all rental dwellings as hereinafter provided by inspection and enforcement of the International Property Maintenance Code and the Codified Ordinances of the City of Portsmouth, fixing the responsibilities of owners, operators and occupants of all rental dwellings and providing for the administration of the Rental Dwelling Code.

§ 1361.01.

Under the Code, owners of rental properties within Portsmouth are required to apply to the Portsmouth Board of Health for a rental dwelling permit in order to rent their property.  § 1361.09.  The Code Enforcement Official is charged with issuing or denying the permits, which "shall be issued . . . if upon inspection of the rental dwelling it is determined that the rental dwelling meets the requirements of this code."  *Id.*  The City charges fees for issuing and renewing rental dwelling permits.  §1361.13 (A).  The annual license fees range from $50 for one unit to $480 for twelve units or more.  *Id.*

2

Inspections are conducted at least once a year and on a minimum of forty-eight hours' notice, unless the time period is waived by the tenant or occupant. § 1361.02(A). Section 1361.02(D) of the Code also authorizes the Code Enforcement Official to make an inspection in response to a complaint or if the Official has a valid reason to believe that a violation of the provisions of the Code exists. The scope of the search is limited by the items on the dwelling inspection checklist, a list of eighty search items divided into the following categories: exterior premises, common egress corridor, interior, kitchen/dining, hallways, laundry, basement/mechanicals, bedrooms, bathrooms, and other. (*See* Doc. 20-1, at PageID 523.)

During the first year of the program, property owners were given approximately one year to correct non-critical failures identified in an inspection—those that did not pose an immediate danger to the health or safety of the tenant(s). A specified time period (indicated on the inspection sheet) was provided to correct any critical failures. If a follow-up inspection was required for a critical deficiency, the re-inspection date was also noted on the inspection form. Although no property owners were cited for violations for the rental inspection program, property owners who failed to respond to contacts from the City received a letter entitled "Failure to Schedule Mandatory Rental Inspection." (Doc. 1-1, Exhibit B at PageID 33.) The letter ordered the owner to contact the City Health Department to schedule a dwelling inspection. Failure to do so, the letter stated, "may result in an order to suspend the permit to operate and/or implement the procedures for **Condemnation by the Board of Health** under Section 1311.01 of the Codified Ordinances of the city of Portsmouth and possible issuance of misdemeanor citation." (*Id.*) (emphasis is original).

3

Plaintiffs are rental property owners in the City of Portsmouth, either directly or through their status as controlling members of the Limited Liability Companies that own the rental properties. On June 16, 2014, they filed the instant complaint against Defendants—the City of Portsmouth, Ohio; Christopher S. Smith, Portsmouth's Health Commissioner; and Andrew L. Gedeon, Portsmouth's Director of Environmental Health—arguing that the RDC violates their Fourth, Fifth, and Fourteenth Amendment rights. Specifically, in count one of the complaint, Plaintiffs claim that the Code violates their Fourth Amendment rights by mandating warrantless inspections of their properties without probable cause. Plaintiffs further allege that the Code violates their due process rights under the Fifth and Fourteenth Amendments because it requires Plaintiffs to forfeit their Fourth Amendment rights in order to rent out their property. Plaintiffs also challenge the RDC on Equal Protection grounds in count two of the complaint. According to Plaintiffs, the Code impermissibly applies only to single family rental dwellings and treats multi-unit rental dwellings differently than single-unit rental dwellings. Finally, in count three, Plaintiffs bring a state law claim of unjust enrichment, arguing that the City has collected and inequitably retained inspection and permitting fee assessments by virtue of the RDC.

Both parties now move for summary judgment. Defendants move for summary judgment on all counts of the complaint. Plaintiffs move for partial summary judgment on all claims other than the amount of damages, attorneys' fees, individual liability claims, and any claims regarding Defendants' new policies.[3]

## II.    SUMMARY JUDGMENT STANDARD

---

[3] On July 28, 2014, the RDC was amended. Amongst other changes, the Code now includes a provision indicating that if the owner or occupant refuses to permit free access and entry, "the Health Commissioner or his authorized representative may petition and obtain an order or warrant to inspect from the Portsmouth Municipal Court or Scioto County Court of Common Pleas." § 1311.01. (Doc. 26-1, Ex. 2 at PageID 840.) Plaintiffs refrain from addressing Defendants' new policies in their motion, reserving the right to do so later. Accordingly, the Court expresses no opinion on the constitutionality of or any other claim pertaining to the revised ordinance in this Order.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All reasonable inferences from the record must be drawn in the light most favorable to the nonmoving party, and the court may grant summary judgment only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

## III.   ANALYSIS

### A. Fourth Amendment

Plaintiffs and Defendants both move for summary judgment on Plaintiffs' claim that the RDC is unconstitutional under the Fourth Amendment. According to Plaintiffs, the Code is unconstitutional as applied and on its face, because it mandates warrantless, coerced inspections of the interior of private homes without probable cause. Defendants oppose Plaintiffs' motion and contend they are entitled to summary judgment, arguing that the RDC falls into the closely

5

regulated business and special needs exceptions to the Fourth Amendment's warrant requirement. For the reasons below, the Court finds Plaintiffs' position well-taken.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Mun. Court*, 387 U.S. 523, 527 (1967)*.* The Supreme Court has repeatedly held that "searches conducted outside the judicial process, without prior approval by a judge or a magistrate judge, are *per se* unreasonable subject only to a few specifically established and well-delineated exceptions." *City of Los Angeles v. Patel*, __ U.S. __, 135 S.Ct. 2443, 2452 (2015). *See also Camara*, 387 U.S. at 528–29 (1967) (noting that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant"). This rule, which applies to the states via the Fourteenth Amendment, is applicable to both commercial premises as well as private homes. *See Marshall v. Barlow's, Inc.*, 436 U.S. 311, 312 (1978).

In *Camara*, the Supreme Court held unconstitutional a San Francisco building ordinance which permitted warrantless, unconsented inspections to enforce the city's housing code. As in the instant case, failure to consent to the warrantless, administrative searches authorized by the ordinance was punishable as a misdemeanor. *Camara*, 387 U.S. at 527 n.2. The case arose after an apartment building tenant refused an annual inspection and was charged for failure to comply.

*Id.* After finding that the administrative searches constitute significant intrusions upon the interests protected by the Fourth Amendment, the *Camara* Court held "that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards with the Fourth Amendment guarantees to the individual." *Id.* at 534. The Court reasoned:

> Under the present system, when the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the full limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization. These are questions which may be reviewed by a neutral magistrate without any reassessment of the basic agency decision to canvass an area. Yet, only by refusing entry and risking a criminal conviction can the occupant at present challenge the inspector's decision to search. . . . The practical effect of this system is to leave the occupant subject to the discretion of the official in the field. This is precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested party warrant the need to search. . . . We simply cannot say that the protections provided by the warrant procedure are not needed in this context; broad statutory safeguards are no substitute for individualized review, particularly when those safeguards may only be invoked at the risk of a criminal penalty.

*Id.* at 533. The Court found that the appellant (the apartment building tenant) had a constitutional right to insist that the administrative search be supported by a warrant and that he could not constitutionally be convicted for refusing to consent to the inspection. *Id.* at 540.

In *Sokolov v. Village of Freeport*, 420 N.E.2d 55 (N.Y. 1981), the Court of Appeals of New York applied the principles of *Camara* to a rental ordinance substantially similar to the Portsmouth RDC in this case. As here, the challenged ordinance required that landlords obtain a rental permit prior to leasing their property, which required an inspection of the rental property and a penalty for failure to comply—a fine of $250 was levied for each day a rental property was occupied without a permit. *Id.* at 343–44. The court held that the rental permit ordinance was unconstitutional "as it effectively authorizes and, indeed, requires a warrantless inspection of

residential rental property." *Id.* at 346.  In reaching its holding, the court rejected the argument that because the ordinance punished renting without a permit, as opposed to the failure to consent to a search, any inspections under the ordinance was conducted with the consent of the owner. The court noted, "[a] property owner cannot be regarded as having voluntarily given his consent to a search where the price he must pay to enjoy his rights under the Constitution is the effective deprivation of any economic benefit from his rental property." *Id.*

The Ohio Supreme Court reached a similar conclusion in *Wilson v. City of Cincinnati*, 346 N.E.2d 666 (Ohio 1976).  In that case, the court considered a challenge to a Cincinnati ordinance requiring that a property owner obtain a Certificate of Housing Inspection prior to entering into a contract for the sale of property.  *Id.* at 670.  Under the ordinance, the seller of the home could obtain a certificate only by agreeing to a search of the home and, with limited exception, failure to obtain a certificate prior to sale subjected the seller to criminal prosecution. *Id*.  The Ohio Supreme Court found the ordinance unconstitutional, noting that "the import of *Camara* is that the Fourth Amendment prohibits placing appellant in a position where she must agree to a warrantless inspection of her property or face a criminal penalty." *Id.* at 671.

Finally, most recently in *City of Los Angeles v. Patel*, 135 S.Ct. 2443 (2015), the Supreme Court entertained a Fourth Amendment challenge to a city ordinance requiring hotel operators to provide hotel guest records to the police on demand.  The ordinance contained no warrant provision, and failure to comply with the inspection was punishable as a misdemeanor. *Id.* at 2448.  The Court found the administrative search regime facially unconstitutional because it penalized hotel owners for declining to produce their records without affording the opportunity for precompliance review.  *Id.* at 2546.  In doing so, the Court reaffirmed that "absent consent,

8

exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Id.* at 2452. However, the Court held only that the hotel owner be afforded an *opportunity* to have a neutral decisionmaker review the search demand before being subject to penalties for failure to comply, noting that an actual review only need to take place when the hotel operator objects to the inspection.[4] *Id.* at 2453 (emphasis in original).

Guided by the above cases, the Court finds that the Portsmouth RDC violates the Fourth Amendment insofar as it authorizes warrantless administrative inspections. It is undisputed that the RDC affords no warrant procedure or other mechanism for precompliance review. As in the above cases, the owners and/or tenants of rental properties in Portsmouth are thus faced with the choice of consenting to the warrantless inspection or facing criminal charges, a result the Supreme Court has expressly disavowed under the Fourth Amendment. *See Camara*, 387 U.S. at 532. *See also Patel*, 135 S.Ct. at 2452 ("A hotel owner who refuses to give an officer access to his or her registry can be arrested on the spot. The Court has held that business owners cannot reasonably be put to this choice."). Therefore, unless a recognized exception to the warrant requirement applies, the Code's failure to include a warrant provision violates the Fourth Amendment.

Defendants contend that two exceptions apply, which the Court will consider in turn.

### i. *Closely Related Business Exception*

---

[4] In line with *Patel*, lower courts have generally only upheld ordinances requiring advance consent to search when the government was required to obtain a warrant if the owner/occupant refused consent and the ordinance did not exact criminal penalties for lack of consent. *See Crook v. City of Madison*, 168 So.3d 930 (Mississippi 2015) (collecting cases); *Hometown Co-op. Apartments v. City of Hometown*, 515 F. Supp. 502, 503 (N.D. Ill. 1981) ("By providing for a warrant procedure in cases in which a new owner or lessee of property refuses to consent to an inspection by the building department, the City of Hometown has remedied the fatal flaw in its earlier point of sale inspection ordinance. The property owner is no longer forced to choose between consenting to a warrantless search or subjecting himself or herself to substantial fines for failure to procure a certificate of inspection.").

Defendants first contend that the closely regulated industry exception to the Fourth Amendment's warrant requirement applies. This exception—under which warrantless inspections of closely regulated business premises or industries may be reasonable—is premised on the observation that "[c]ertain industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise." *Barlow's Inc.*, 436 U.S. at 313 (internal citations omitted). The Supreme Court has noted that the element that distinguishes such industries from ordinary business is "a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware." *Id.* In the past 45 years, the Supreme Court has only identified four industries as being closely regulated: liquor sales, firearms dealing, mining, and running an automobile junkyard. *See Patel,* 135 S.Ct. at 2454. The "clear import of [these cases] is that the closely regulated industry . . . is the exception." *Marshall*, 436 U.S. at 314. In *Patel*, for example, the Court indicated that simply listing the above closely regulated industries refuted the argument that hotels should be considered closely regulated, noting that unlike those industries "nothing inherent in the operation of hotels poses a clear and significant risk to the public welfare." *Patel*, 135 S.Ct. at 2454.

In this case, the Court similarly concludes that the rental of residential properties is not a closely regulated industry. *See Sokolov*, 52 N.Y.2d at 349 n.1 ("Nor may it be said that the business of residential rental is of such a nature that consent to a warrantless administrative search may be implied from the choice of the appellants to engage in this business."). Defendants point to several sections of the Ohio's landlord-tenant statute (Ohio Rev. Code, Chapter 5321), to the Servicemembers Civil Relief Act, 50 App. U.S.C.A. § et seq., and to the

Residential Lead-Based Pain Hazard Reduction Act of 1992, 42 U.S.C. § 4852d, in support of their claim that the rental business is closely regulated.  However, these regulations do not "establish a comprehensive scheme of regulation" that distinguishes the residential rental business from numerous other businesses or industries.  *Patel,* 135 U.S. at 2455.  As the Supreme Court has warned, to classify the rental business as closely regulated "would permit what has always been a narrow exception to swallow the rule." *See id.*, *Barlow's Inc.,* 436 U.S. at 313.  Accordingly, the exception does not render the warrantless inspections authorized by the Code reasonable under the Fourth Amendment.

### ii.  *Special Needs Exception*

Defendants next contend that the Code is constitutional under the special needs exception.  "[I]n limited circumstances, a search unsupported by either warrant or probable cause can be constitutional when 'special needs' other than the normal need for law enforcement provide sufficient justification." *Ferguson v. City of Charleston,* 532 U.S. 67, 76 n.7 (2001).  The Supreme Court has observed that "special needs" are typically recognized only where the usual warrant or probable-cause requirements have somehow been rendered impracticable. *See Griffin v. Wisconsin,* 483 U.S. 868, 873 (1987).  For example, the warrant requirement in the context of a public school, "would unduly interfere with the maintenance of the swift and informal disciplinary procedures that are needed, and strict adherence to the requirement that searches be based upon probable cause would undercut the substantial need of teachers and administrators for freedom to maintain order in schools." *Vernonia School Dist.*, 515 U.S. 652, 653 (1995) (quoting *Jersey v. T.L.O.*, 469 U.S. 325, 340, 341 (1985)) (internal quotation marks omitted).  Similar reasoning has resulted in the special needs exception being applied in the

11

context of searches of a probationer's home, *Griffin*, 483 U.S. at 873; work-related searches of employees' desks and offices, *O'Connor v. Ortega*, 480 U.S.709, 721–25 (1987); drug tests of train operators, *Skinner v. Railway Labor Exec. Ass'n.*, 489 U.S. 602, 622–23 (1989); and body cavity searches of prison inmates, *Bell v. Wolfish*, 441 U.S. 558–60 (1979).

Defendants identify the special need in this case as the stated purpose of the rental permit and inspection program: "to protect the public health, safety and welfare of occupants in all rental dwellings." The only apparent basis for finding that the warrant requirement is impractical in this case is Defendant Christopher Smith, the Portsmouth Health Commissioner's assertion that a search warrant requirement would prevent the City from addressing interior building issues or other violations not visible from the public right away, unless the owner consented to an inspection or provided information sufficient to support a warrant. (Smith Affidavit, Doc. 20-1 at PageID 509.) Smith declares that because tenants are reluctant to report problems a warrant requirement would frustrate the purpose of the Code. (*Id.*)

In order to assess the reasonableness of the RDC inspections under the special needs exception, the Court balances three factors: (1) the nature of the privacy interest upon which the search intrudes, (2) the character of the intrusion complained of, and (3) the nature and immediacy of the governmental concern at issue and the efficacy of the Code for meeting it. *Vernonia*, 515 U.S. at 654, 658, 660.

In this case, the Court is satisfied that the warrantless inspections impact a substantial privacy interest, as "the sanctity of private dwellings [is] ordinarily afforded the most stringent Fourth Amendment protection." *United States v. Martinez-Fuerte,* 428 U.S. 543, 561 (1976). *Cf. California v. Ciraolo*, 476 U.S. 207, 226 (1986) (Powell, dissent) (describing the home as "an

12

area where privacy interests are most cherished in our society"); *U.S. v. Scott*, 450 F.3d 863, 871 (9th Cir. 2005) ("We are especially reluctant to indulge the claimed special need here because Scott's privacy interest in his home . . . is at its zenith.").  Furthermore, unlike the cases in which the special needs exception has been applied, the expectation of privacy is not appreciably diminished here. *See, e.g., Vernonia,* 515 U.S. at 657 (noting that students have a lesser expectation of privacy in the school environment); *Bell*, 411 U.S. at 557 (finding that a detainee had a diminished expectation of privacy)*. See also Skinner,* 489 U.S. at 624 (noting that the special needs exception is applicable in "limited circumstances, *where the privacy interests implicated by the search are minimal*, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by the requirement of individualized suspicion") (emphasis added).  Defendants point to the Ohio landlord/tenant statute—in particular, the requirement that a tenant must admit the landlord onto the premises—as evidence that the subjects of the inspections have a diminished expectation of privacy.   However, the Court is not persuaded that the statute meaningfully impacts the otherwise substantial privacy interest impacted by the inspections.

The inspections are also significantly intrusive.  As the Supreme Court has noted, the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court*, 407 U.S. 297, 313 (1972). *See also Camara*, 387 U.S. at 539 ("administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment").  Although, as Defendants argue, the inspections are scheduled with advance notice and can be as brief as five minutes (Howard Depo., Doc. 17 at PageID 370), the inspections authorized by the RDC are extensive.

13

The search inspection sheet details eighty items to be inspected throughout the entirety of the rental property. The Court thus concludes that the intrusion is significant.

Finally, the Court considers the nature and immediacy of the governmental concern at issue and the efficacy of the Code for meeting it. The Court has no doubt that securing the public health, safety and welfare of Portsmouth's rental property occupants is a valid and important government concern. However, as noted above, special needs are generally only recognized when the ordinary Fourth Amendment requirements are impracticable. In addition, the Supreme Court precedents "establish that the proffered special need . . . must be substantial—important enough to override the individual's acknowledged privacy interest, sufficiently vital to suppress the Fourth Amendment's normal requirement[s]." *Chandler v. Miller*, 520 U.S. 305, 318 (1997).

In this case, it is not evident that Defendants could not fulfil the purpose of the RDC within the confines of a reasonable search warrant requirement or that the warrant requirement is otherwise impracticable in this context. The only evidence to suggest that a warrant requirement would interfere with the purpose of the Code is Health Commissioner Smith's assertion that the City would not be able to establish probable cause to conduct interior inspections with a warrant requirement. (*See* Smith Affidavit, Doc. 20-1 at PageID 509.)

However, the warrant requirement would not impose as onerous of a burden on Defendants as Smith's declaration suggests. In fact, in *Camara,* the Court specifically disagreed with the argument that "warrants should only issue when the inspector possesses probable cause to believe that a particular dwelling contains violations of the minimum standards prescribed by

14

the code being enforced." *Camera*, 387 U.S. at 534.   Probable cause in the administrative

search context requires a much lesser showing:

> Probable cause in the criminal law sense is not required.  For the purposes of an
> administrative search . . . probable cause justifying the issuance of a warrant may
> be based not only on specific evidence of an existing violation but also on a
> showing that reasonable legislative or administrative standards for conducting an
> inspection are satisfied with respect to a particular establishment.

*Barlow's*, 436 U.S. at 320.  Some of the administrative standards articulated as justifying an

administrative inspection include "the passage of time, the nature of the building (*e.g.* a multi-

family apartment house), or the condition of the entire area." *Camara*, 387 U.S. at 538.

Defendants may obtain a warrant to inspect residences of owners who refuse consent to the

administrative search based on these justifications.   The evidence before the Court therefore

provides no indication that departure from the Fourth Amendment's warrant requirement is

necessary to fulfill the proffered special need.  *See Chandler*, 520 U.S. at 318-319 (declining to

find a special need where there is no indication of a "concrete danger demanding departure from

the Fourth Amendment's main rule").  When balanced against the significant privacy interest and

substantial intrusion thereon, the Court concludes that the warrantless inspections authorized by

the Code are unreasonable under the Fourth Amendment.

Having determined that the Code is not saved by special needs or the closely regulated

industry exceptions, the Court concludes that the Code's failure to include a warrant provision

violates the Fourth Amendment.  Therefore, as to the Fourth Amendment claim, Plaintiff's

Motion for Partial Summary Judgment is GRANTED and Defendants' Motion for Summary

Judgment DENIED.

### B. Equal Protection and Qualified Immunity

Defendants move for summary judgment on Plaintiffs' Equal Protection and individual capacity claims against Defendants Smith and Gedeon.  Plaintiffs have failed entirely to respond to Defendants' motion with regard to these claims.  Plaintiffs have therefore abandoned the Equal Protection and individual capacity claims. *See Brown v. VHS of Mich.*, 545 Fed. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.")  The Court therefore GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' Equal Protection claim and individual capacity claims against Defendants Smith and Gedeon.

### C. Unjust Enrichment

Finally, the City of Portsmouth has moved for summary judgment on Plaintiffs' unjust enrichment claim on the basis that, as a political subdivision of the state, it is immune from liability.  According to Plaintiffs, the City of Portsmouth inequitably acquired and retained inspection and permit fees from Plaintiffs,[5] which it used to fund unconstitutional inspections.  Plaintiffs seek reimbursement for the amount paid in inspection fees related to the inspections.

Plaintiffs argue, and the Court agrees, that the unjust enrichment claim should survive the motion for summary judgment.  Ohio Rev. Code Chapter 2744 grants broad immunity to political subdivisions such as the City.  However, the "Ohio courts have uniformly held that while sovereign immunity bars tort claims for money damages, it has no application in actions for equitable relief." *Cincinnati v. Harrison*, No. C-130195, 2014 WL 2957946, at *7 (Ohio App. 1 June 30, 2014) (collecting cases).  Historically, Ohio cases have "treated the prayer for

---

[5] According to the Complaint, Plaintiff Baker paid in excess of $1,300 in rental inspection fees in 2013, Plaintiff Howard has paid $900, Plaintiff Oliver paid in excess of $2,900, and Plaintiff Ross paid approximately $640 in December of 2012 and $640 in December of 2013.  (Complaint, Doc. 1 at PageID 3.)

16

return of wrongfully collected funds as one seeking restitution; that is, a remedy that prevents the state from being unjustly enriched at the expense of the plaintiff." *Morning View Care Center v. Ohio Dept. of Job and Family Servs.*, No. 04AP-57, 2004 WL 2591237, at *5 (Ohio App. 10 Nov. 12, 2004). Although "restitution has been available both in equity and in law as the remedy for an unjust enrichment," *Santos v. Ohio Bur. Of Workers' Comp.*, 801 N.E.2d 441, 444 (Ohio 2004) (citing Restatement of the Law, Restitution (1937)), Ohio cases in which a plaintiff claims a state agency has wrongfully collected certain funds are characterized generally as claims for equitable restitution. *See e.g., Ohio Hospital Assoc. v. Ohio Dept. of Human Servs.*, 579 N.E.2d 695 (Ohio 1991) ("The reimbursement of monies withheld pursuant to an invalid administrative rule is equitable relief, not money damages, and is consequently not barred by sovereign immunity."); *Santos*, 801 N.E.2d at 446 ("A suit that seeks the return of specific funds wrongfully collected or held by the state is brought in equity.").

Based on the above case law, the Court concludes that Defendants' Motion for Summary Judgment should be denied with respect to Plaintiff's unjust enrichment claim. Plaintiffs seek relief in the form of the restitution of inspection fees related to unconstitutional inspections. Because Plaintiff seeks equitable relief the City is not entitled to immunity on the unjust enrichment claim and the Court will deny Defendants' motion on this claim.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (Doc. 26) is **GRANTED.** Defendants' Motion for Summary Judgment (Doc. 20) is **DENIED** with respect to Plaintiffs' Fourth Amendment and unjust enrichment claims. Defendants' Motion is

**GRANTED** with respect to Plaintiffs' Equal Protection claim and individual capacity claims against Defendants Smith and Gedeon.

    **IT IS SO ORDERED.**

Judge Susan J. Dlott
United States District Court